**October 27, 2023 Updated Defendant List**

**Defendant No. 1**

Jeffrey Dorko

Federal Emergency Management Agency

Assistant Administrator, Logistics Management Directorate

500 C. St. SW

Washington, DC 20024

**Defendant No. 2**

Lauren Kaufer

Federal Emergency Management Agency

Director, Office of Professional Responsibility

500 C St. SW

Washington, DC 20024

**Defendant No. 3**

Carla Gammon

Federal Emergency Management Agency

Deputy Assistant Administrator for Logistics Support, Logistics Management Directorate

500 C St. SW

Washington, DC 20024

**Defendant No. 4**

Grace Tilman

Federal Emergency Management Agency

500 C. St. SW

Washington, DC 20024

**Defendant No. 5**

Robyn Jackson

Federal Emergency Management Agency

Employee Relations Supervisor

500 C St. SW

Washington, DC 20024

**Defendant No. 6**

Keith Williams

Federal Emergency Management Agency

Deputy Director, Logistics Systems

500 C St. SW

Washington, DC 20024

**Defendant No. 7**

Steven Cochran

Federal Emergency Management Agency

500 C. St. SW

Washington, DC 20024

**Defendant No. 8**

Georgia Baione

Federal Emergency Management Agency

500 C. St. SW

Washington, DC 20024

**Defendant No. 9**

Josiah Goyt

Federal Emergency Management Agency

500 C. St. SW

Washington, DC 20024

**Defendant No. 10**

Anna Necheles

Federal Emergency Management Agency

500 C. St. SW

Washington, DC 20024

**Defendant No. 11**

Richard Moore

Federal Emergency Management Agency

500 C St. SW

Washington, DC 20024

**Defendant No. 12**

Maxwell Domalavage

Employee

500 C St. SW

Washington, DC 20024

**Defendant No. 13**

Michael Bernardin

Federal Emergency Management Agency

500 C St. SW

Washington, DC 20024

**Defendant No. 14**

Rachel Potter

Federal Emergency Management Agency

500 C St. SW

Washington, DC 20024

**Defendant No. 15**

Joseph Fabre, Jr.

500 C St. SW

 Washington, DC 20024

**Note**:  While Alejandro Mayorkas and Deanne Criswell will be served with summons, this is not a complaint regarding the federal government. Mr. Mayorkas and Ms. Criswell are required to receive copies of complaints regarding federal employees in their official capacity. These are the personal civil suits for 1:22-CV-02355-GLR.

Note 2: I will file a motion to join additional defendants who are not eligible to be included now at a later date.

UNITED STATES DISTRICT COURT OF MARYLAND

NORTHERN DIVISION

OCTOBER 27, 2023 STATEMENT OF FACTS

1.  I previously worked at FEMA Headquarters (HQ) in Washington, DC as a Logistics

    Management Specialist. (Exhibit AE: April 11, 2023 Updated Statement of Facts at 1) I received

    notice of my proposed removal on August 21, 2019. (Exhibit A: Removal Proposal) The reasons for

    my proposed removal were failure to follow instructions, absence without leave, lack of candor, and

    inappropriate behavior. (Exhibit A: Removal Proposal, pp. 1-4) On October 16, 2019, I received

    Agency's decision to remove me from federal serve effective October 17, 2019 with a Mutual

    Separation and General Release Agreement. (Exhibit B: Mutual Separation and General Release)

    Carla Gammon, a white female and the Deciding Official for my termination as Mr. Langley's

    supervisor, signed the Mutual Separation and General Release Agreement on behalf of the Agency.

    The Mutual Separation and General Release gave me 24 hours to withdraw HS-FEMA-01522-2019

    and agree not to work for the Department of Homeland Security (DHS) for three years in exchange

    for being allowed to resign. (Exhibit B: Mutual Separation and General Release) The Mutual

    Separation and General Release Agreement did not address my security clearance for future federal

    employment or my SF-50. I did not sign it. (Exhibit C: Oct 17, 2019 Mutual Separation and General

    Release Response)

2.  On June 24, 2019, FEMA received HS-FEMA-01522-2019, the first formal discrimination

    complaint on the bases of race, gender, and retaliation. (Exhibit D: HS-FEMA-01522-2019);

    (Exhibit E:  HS-FEMA-01522-2019 Postage Envelope) I subsequently updated it twice.

    (Exhibit F:  HS-FEMA-01522-2019 Nov 27, 2019 Update); (Exhibit G: HS-FEMA-01522-

2019 Dec 2 2019 Update)

Importantly, the Agency excluded multiple letters from Mr. Neal in the Report of Investigation. (Exhibit H: April 14, 2020 Neal Letter); (Exhibit I: July 8, 2020 Neal Email and Letter) In the July 8, 2020 Neal Email and Letter, Mr. Neal wrote that he had lost all confidence in the investigator and requested that the Agency assign a new investigator. (Exhibit I: July 8, 2020 Neal Email and Letter, pp. 3) Mr. Neal requested "that a new investigator be assigned who at a minimum has appropriate training and experience to be sensitive to and effectively interact with my autistic client and objectively work with her to ensure her side of the story is heard." (Exhibit I: July 8, 2020 Neal Email and Letter, pp. 3) Mr. Neal went on to write that "While the Agency has missed every deadline in its initial handling of this case, the contract investigator is now placing unreasonable time restraints on my client, along with constant threats that she will be considered "' non-compliant.' " All this while my client was concurrently preparing and participating in a contested MSPB hearing." (Exhibit I: July 8, 2020 Neal Email and Letter, pp. 3) Despite this, the Agency refused to permit me additional time to provide responses to HS-FEMA-01522-2019's 600+ interrogatories. (Exhibit J: ROI 991)

3. The Agency's October 25, 2021 Final Agency Decision (FAD) found that I failed to prove by a preponderance of the evidence that FEMA discriminated against me. According to the FAD, I could appeal it to the EEOC within 30 days. (Exhibit K: HS-FEMA-01522-2019 FAD at 23) Although I objected to the facts accepted for investigation (the Agency split the claims), the Agency did not provide a response to my objection. (Exhibit L: HS-FEMA-01522-2019 Objection to Claims)

4.  According to Mrs. Gammon's October 17, 2019 Removal Decision, I had the right to appeal to MSPB no later than 30 days after the effective date of that action. (Exhibit M: Ransom MSPB Appeal, pp. 20-21).

5.  Mr. Neal appealed the Agency's October 17, 2019 removal to the MSPB in DC-0752-20-0145-I-1 on November 8, 2019. (Exhibit N:  Ransom MSPB Acknowledgement Order); (Exhibit M: Ransom MSPB Appeal) November 8, 2019 was within 30 days of my October 17, 2019 wrongful termination. (Exhibit B:  Mutual Separation and General Release); (Exhibit C: Oct 17, 2019 Mutual Separation and General Release Response) Mr. Neal first introduced the Prehearing Submission during the MSPB case. Notably, footnote 3 states that "In an effort to save time at the hearing, I admitted the appellant's statement of facts from her prehearing submission into the record. The appellant believes this statement provides background information to explain what happened to her before the agency proposed her removal." (Attachment 1: MSPB Decision at 7) I also included the Prehearing Submission in 1:21-CV-01563-JMC. (Exhibit O: 1:21-CV-01563-JMC Memorandum of Law in Opposition to Motion to Dismiss or, in the Alternative, Transfer at 1)

6.  Judge Kasandra Robinson Styles issued MSPB initial decision affirming the Agency's wrongful termination on July 30, 2020 in DC-0752-20-0145-I-1. (Attachment 1: MSPB Decision) According to the MSPB decision, I could request judicial review by the EEOC of my discrimination claims only, excluding all other issues, within 30 calendar days of the date this decision became final. (Attachment 1: MSPB Decision at 61) DC-0752-20-0145-I-1 became final on September 3, 2020. (Attachment 1: MSPB Decision at 55)

7.  In DC-0752-20-0145-I-1's initial appeal, my former attorney alleged multiple defenses that are the basis of this appeal:

a)      Charges and specifications should have not been sustained/lacked supporting evidence. –
Evidence in the record supports this defense.

b)      Douglas Factors were considered errantly or misapplied. – Evidence in the record
supports this defense.

c)      Harmful Procedural Error:  Employee was not provided with the materials used by
Agency in its decision making. Appellant did not have adequate access to materials in making
response to proposal.

d)      Unlawful Discrimination – Appellant was discriminated against for her physical
disabilities. (Exhibit M: Ransom MSPB Appeal, pp. 6)

8.      In DC-0752-20-0145-I-1's Prehearing Submission, my former attorney alleged multiple
other defenses:

a.      Agency's Burden of Proof Based on Preponderance of Evidence – The Appellant
challenges the truthfulness of the actual facts alleged. If the facts are not proven by a
preponderance, the charge itself should not be sustained.

b.      Prohibited Personnel Practice – 5 U.S.C. § 2302(b) states that any employee who has
authority to take, direct others to take, recommend, or approve any personnel action, shall not,
with respect to such authority… discriminate for or against any employee or applicant for
employment…on the basis of handicapping condition, as prohibited under Section 501 of the
Rehabilitation Act of 1973 (29 U.S.C. [§] 791).

c.      Disability Discrimination – The Agency did not adequately accommodate for, or consider
mitigating factors involved with the Appellant's diagnosis of autism and other medical
conditions for which she was seeking treatment. For example, the Agency in this case issued
absent without leave (AWOL) charges on the basis of disability discrimination. The Appellant is

4

a person with a disability entitled to the protection of disability discrimination laws. *Davis v. Department of Veterans Affairs*, 106 M.S.P.R. 654 (2007). In this case, the AWOL charges were related mostly for medical issues including her poor eyesight. Other charges were related to, or the situation complicated by her autism.

d.      Vagueness of Charges – In this case the charges were too vague and thus did not provide a legitimate opportunity to respond. See *Mason v. Dep't. of Navy*, 70 M.S.P.R. 584 (1996). The reference to "inappropriate behavior" simply is not adequately defined for the Appellant to have known that her actions would subject her to discipline.

e.      Disparate Treatment – Other employees have engaged in similar conduct to the Appellant, but have not been charged with discipline, or have not been removed from the service. The Appellant's disciplinary penalty is different and out of line with what other similarly situated employees have received for similar misconduct. *Fearon v. Dept. of Labor*, M.S.P.R. 428, 434 ¶ 11 (2005). Other similarly situated employees in the office (and under the same change of command) have been found to have committed similar inappropriate conduct but were not disciplined at all. See *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012).

Consistency of the discipline in such cases is a part of the Douglas factor mitigation analysis. In this case, the deciding officials claims that the penalty was consistent with a table of comparables, but they clearly were not. In proving the disparate penalty claim, the MSPB has found that an appellant has to establish that the charges and the circumstances surrounding the charged behavior are "substantially similar." Doing so in the past required proof that the comparable penalty involved an employee in the same work unit, with the same supervisor, who was subjected to the same standards governing discipline. *Von Muller v. Dep't. of Energy*, 101 M.S.P.R. 91, ¶ 22, aff'd, 204 F. App'x 17 (Fed. Cir. 2006). However, the chain of command

issue has changed under *William v. SSA*, 586 F.3d 1365 (Fed. Cir. 2009) (Agency must explain why different chain of command justifies a different penalty). Since Williams, the MSPB has avoided hard and fast rules regarding disparate penalty issue, opting for an overall review of the facts at issue to determine whether a basis exists for the disparate penalty between similar employees with similar misconduct.

f.      Elements Needed to Prove Lack of Candor – Lack of candor generally requires that an agency prove two elements according to *Fargnoli v. Dept. of Commerce*, 2016 MSPB 19. These are: 1) The federal employee gave incorrect or incomplete information; and 2) The federal employee (he/she) did so knowingly. The MSPB Board also found that the "element of deception" required under *Ludlum* entailed that the employee must have "knowingly" failed to be forthright. See *Parkinson v. DOJ*, 815 F. 3d at 766-67).

g.      Improper Penalty Analysis – The penalty analysis is governed by *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305-06 (1981). In *Douglas*, the MSPB held that 12 factors ("Douglas Factors") must be considered when evaluating possible penalties for disciplinary cases involving federal employees. A federal supervisor is responsible for ensuring that a disciplinary penalty is fair and reasonable. If a penalty is disproportionate to the alleged violation or is unreasonable under *Douglas*, it is subject to being reduced or reversed by the MSPB, even if the charges would otherwise be sustained.

h.      Consideration of Lesser Penalties – An agency must give "substantive consideration to a lesser penalty." *Banez v. Dep't. of Defense*, 69 M.S.P.R. 642, 650 (1996). The Douglas Factors described by the proposing and deciding officials inadequately justify not using progressive discipline or a lesser penalty in this case. If a deciding official fails to appropriately consider relevant factors, the MSPB does not need to defer to the agency's penalty determination. And if

the MSPB finds the agency's original penalty to be too severe, it may mitigate it to the maximum

reasonable penalty. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).

i.        Mitigation of Penalties – The Administrative Judge should mitigate the removal decision

in this case because the agency failed to weigh relevant factors and thus the penalty exceeds the

bounds of reasonableness. See *Toth v. U.S.P.S.*, 76 M.S.P.R. 36, 39 (1997). While penalty

selection is generally a matter of federal agency discretion, the MSPB will review a case to

ensure that penalty judgement has been properly exercised. In this case, even if the charges are

sustained, the Administrative Judge should mitigate the penalty of removal to something less

than removal from the federal service. The Administrative Judge should mitigate to the

maximum reasonable penalty because the Deciding Official failed to demonstrate that she

considered the relevant mitigating factors including the comparables chart and the Appellant's

autism, before deciding upon the penalty. *Cunningham v. U.S.P.S.*, 109 M.S.P.R. 402, ¶ 24

(2008).

j.        Harmful Procedural Error – Reversal of a personnel decision is required where a federal

agency commits harmful error which significantly impairs a federal employee's rights. 5 C.F.R.

§ 1201.56(c)(3). Generally, before a federal employee can be disciplined for alleged misconduct

or performance deficiencies, they are entitled to due process of law. The core of due process for

disciplinary actions consists of (1) notice of the misconduct or performance issues; and (2) the

opportunity to respond to these issues. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed.

Cir. 2011). A federal employee must be given a meaningful opportunity to invoke the decision

maker's discretion before a personnel action is finalized. *Cleveland Bd. of Education v.

Loudermill*, 470 U.S. 532, 546 (1985).

        When a federal employee is able to show that the application of the agency's procedures

were not in accordance with statute, rule or regulation, the MSPB may order a reversal. *Jones v. Dept. of Treas.*, 93 M.S.P.R. 494, 499 (2003). In this case, the Deciding Official was made aware that the Appellant could not access necessary information for her response because she did not have access to her work computer. The Deciding Official ignored this issue. Additionally, the Deciding Official relied upon information she reviewed outside of the proposal which had been presented to the Appellant. Thus, the Appellant had no fair notice of those things she needed to respond to.

In *Jenkins v. EPA*, 2012 MSPB 70 (May 4, 2012), the Board reversed a removal decision by a federal agency because it had not provided due process to the federal employee involved. In that case, the federal employee had been proposed for removal from her position with the EPA. The Agency then removed the employee, allegedly relating to threats made and abusive language in the workplace. The employee appealed to the MSPB, but an administrative judge dismissed her claims, upholding the removal. The employee then filed for review of the decision by the Board of the MSPB.

The MSPB reviewed and reversed the administrative judge because the federal agency had denied the federal employee minimum due process of law. In particular, the MSPB found that the Agency had failed to give the employee notice of an aggravating penalty factor used as a basis for discipline in her case, ruling that: "when an agency intends to rely on an aggravating factor as the imposition of a penalty, such factors should be included in the advance notice of [the] adverse action so that the employee will have a fair opportunity to respond to those factors before the deciding official." *Jenkins*, at 4.

Administrative judge should take care in cases involving information used by a deciding official in a disciplinary action which was provided to a federal employee prior to a decision

being made on discipline. The *Jenkins* decision make it clear that the Board believes that federal agencies, prior to making adverse action decisions, must first provide federal employees advance notice of significant information relating to proposed adverse actions.

A federal agency must provide copies of all information relied upon in the processing of a disciplinary action in order to prepare for their response to the proposed action. The Deciding Official in this case considered important information that was not provided to the Appellant. This is a basis for reversal of the action. New information, not provided to a federal employee is considered "*ex parte* communications." The U.S. Court of Appeals for the Federal Circuit has held that *ex parte* communications that introduce new and material information about a federal employee's case to a deciding official constitutes a due process violation. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999).

The Federal Circuit Court of Appeals in *Ward v. USPS*, 634 F.3d 1274 (Fed. Cir. 2011) held that information not provided to an employee regarding penalty determinations (under the Douglas Factors) were also subject to due process:

> "*Ex parte* communications that introduce new and material information whether material to the merits of the underlying charge or material to the penalty to be imposed, violate due process. There is no constitutionally relevant distinction between *ex parte* communications relating to the underlaying charge and those relating to the penalty."

According to her deposition, the Deciding Official decided on sustaining removal based upon information that was not provided to the Appellant prior to the oral and written response stages. This is reversible error.

k.    Error in Considering the Table of Penalties – The disciplinary penalty assessed in this case does not meet the description used in the agency's Table of Penalties. See *Brenner v. DOI*, 116 M.S.P.R. 482 (2011) (MSPB upholding administrative judge's ruling mitigating discipline

because the federal agency had misinterpreted their Table of Penalties). The language cited by the proposing and deciding officials does not fit the charge and penalty that was assessed. In this case, they misinterpreted the charge of failing to follow an instruction as the charge of insubordination and therefore improperly considered removal.

The comparables chart shows that similarly situated employees have received lesser penalties in the past which conflict with a deciding official's application of the Table of Penalties. The Appellant received a removal action for being AWOL, but other employees have received lesser penalties for the same offense. (Exhibit P: Prehearing Submission, pp. 4-11 of 80)

9.      Mr. Neal appealed the MSPB's decision's discrimination claim to EEOC OFO in 2021000075 on October 3, 2020. (Exhibit Q: 2021000075 EEOC Acknowledgement Letter) October 3, 2020 was 30 calendar days of DC-0752-20-0145-I-1 becoming final. Mr. Neal acknowledged he made the appeal without a brief, apologized, and explained his position in a letter to EEOC. (Exhibit R: Tilman Barnhart Letter) This appeal primarily focused on the failure to accommodate claim based on my autism diagnosis. Since I had not been diagnosed with autism at the time I filed HS-FEMA-01522-2019 with the Agency, I did not include disability as a basis for discrimination. Once I became aware of my autism diagnosis and informed the Agency, my former attorney made the MSPB complaint a mixed case by adding disability. Although he referenced a physical disability it was for my autism, which does sometimes affect me physically.

On May 24, 2021, the EEOC OFO affirmed the MSPB decision. (Attachment 2: EEOC 2021000075 Decision) According to the decision, I had the right to file a civil action in an

appropriate United States District Court, based on the MSPB decision, within 30 calendar days

of the date I received that decision. (Attachment 2: EEOC 2021000075 Decision at 6)

10. I appealed HS-FEMA-01522-2019 to EEOC in 2022000766 based on harassment and

discrimination, to include reinstatement, to EEOC on November 24, 2021. (Exhibit Z:

2022000766 EEOC Acknowledgement Letter) November 24, 2021 is within 30 days of my

receipt of the October 25, 2021 HS-FEMA-01522-2019 FAD. (Exhibit K: HS-FEMA-

01522-2019 FAD, pp. 23); (Exhibit S:  2022000766 Updated EEO Complaint Info 1.4) The

EEOC affirmed the Agency's wrongful termination on January 31, 2023. (Attachment 3:

2022000766 EEOC Decision) According to 2022000766, I had the right to file a civil action

in an appropriate United States District Court within 90 calendar days from the date I

received that decision. (Attachment 3: 2022000766 Decision, pp. 8) I filed 1:22-CV-02355-

GLR on September 15, 2022. (Exhibit AB: September 15, 2022 Statement of Facts)

11.    According to 29 CFR Part 1614,

A complainant who has filed an individual complaint, an agent who has filed a class
complaint or a claimant who has filed a claim for individual relief pursuant to a class
complaint is authorized under title VII, the ADEA, the Rehabilitation Act, and Genetic
Information Nondiscrimination Act to file a civil action in an appropriate United States
District Court: (a) Within 90 days of receipt of the agency final action on an individual or
class complaint; (b) After 180 days from the date of filing an individual or class
complaint if agency final action has not been taken; (c) Within 90 days of receipt of the
Commission's final decision on an appeal; or (d) After 180 days from the date of filing an
appeal with the Commission if there has been no final decision by the Commission. (e)
After filing an appeal with the Commission from an agency final action, the complainant,
class agent, or class claimant may withdraw the appeal and file a civil action within 90
days of receipt of the agency final action. If the complainant, class agent, or class
claimant files an appeal with the Commission from a final agency action and more than
90 days have passed since receipt of the agency final action, the appellant may file a civil
action only in accordance with paragraph (c) or (d) of this section. (f) After filing a
request for reconsideration of a Commission decision on an appeal, the complainant,
class agent, or class claimant may withdraw the request and file a civil action within 90
days of receipt of the Commission's decision on the appeal. If the complainant, class
agent, or class claimant files a request for reconsideration of a Commission decision on
an appeal and more than 90 days have passed since the appellant received the

Commission's decision on the appeal, the appellant may file a civil action only in accordance with paragraph (c) or (d) of this section. (g) A complainant, class agent, or class claimant who follows the procedures described in paragraph (e) or (f) of this section shall be deemed to have exhausted his or her administrative remedies.

Code of Federal Regulations, https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1614 (last visited August 31, 2023).

12.     The procedural arguments I mentioned in 2022000766 are indicative of harassment, discrimination, and disparate treatment.

a)     The agency failed to develop an appropriate and impartial record upon which to make findings on the claims raised by the written complaint under Section 1614.108(b) of Title 29 C.F.R. The Agency failed to complete the Report of Investigation. The EEO investigator failed to include all documentation she received from my former attorney and me. Although I amended the complaint to include the removal and termination, the EEO investigator did not question any respondents regarding those specific subjects.

Mr. Daniel Piccaluga and Ms. Grace Tilman, the attorneys who represented the Agency for 2022000766, also represented the Agency for MSPB decision DC-0752-20-0145-I-1. As Agency representatives, they participated in the case. Therefore, they had access to case transcripts. Furthermore, Ms. Tilman also represented the Agency for EEOC OFO decision 2021000075. As Agency representative, Ms. Tilman received the entire EEOC OFO complaint file that EEOC served to her for EEOC OFO Decision 2021000075.

b)     Despite the fact that the agency was aware that I was defending a contested MSPB case, that I am autistic, and that I received an excessively large amount of interrogatories and rebuttals, I was not provided enough time to answer the interrogatories, provide required documentation, and answer rebuttals. I received 453 interrogatories and 87 rebuttals. I was required to provide three requests for information, one of which had multiple follow up questions. The

interrogatories, rebuttals, and requests for information required extremely detailed answers. The

Agency did not provide a response to my former attorney's letter requesting additional time for

these purposes.

c)      The Agency's investigation went beyond the time granted based on EEOC MD-110[1]. The

Agency's investigation lasted over 1 ½ years. Then, DHS investigated HS-FEMA-01522-2019

for another year, also in excess of the time they are provided to investigate claims.

d)      The investigator did not remain neutral as required under EEOC MD-110[1]. For at least

one question, the EEO investigator provided the answer to a respondent. The investigator also

was not thorough, as required by EEOC MD-110. The EEO investigator failed to include all

documentation she received from my former attorney and I. Although I amended the complaint

to include the removal and termination, the EEO investigator did not question any respondents

regarding those specific subjects.

e)      The Agency did not avoid conflicts of interest, as required by EEOC MD-110. First,

every agency head has a statutory obligation to eradicate unlawful employment discrimination

that may occur within the agency. This anti-discrimination responsibility is what requires federal

agencies to administer a fair and impartial investigative process designed to determine the

validity of complaints, as well as to employ affirmative efforts to root out discrimination and

ensure equal employment opportunity. The agency head designates the Director of the Office

responsible for the agency's EEO programs to carry out this obligation. in my case, FEMA's

Director of the Office of Equal Rights (OER), who was also an attorney representing

---

[1] EEOC.gov https://www.eeoc.gov/federal-sector/management-directive/revised-md-110-reference-guide-september-2015 (last visited July 12, 2023) The revised MD-110 provides federal agencies with Commission policies, procedures, and guidance relating to the processing of employment discrimination complaints governed by the Commission's regulations in 29 C.F.R. Part 1614.

the Agency for 2022000766, Ms. Jo Linda Johnson, personally approved additional time for my former supervisor, Mr. Kevin Langley, to complete his responses for the EEO investigator. She was also on the email where my request for additional time to complete my responses was denied.

13.    I lodged 202204160, a third EEOC complaint regarding discrimination in which FEMA is named as the defendant. (Exhibit R: 202204160 EEOC Acknowledgement Letter) 202204160 is an appeal of HS-FEMA-01742-2021. I mentioned it in support of my positive response on Pro Se 7 Form, Complaint for Employment Discrimination, that I believe that defendants are still committing these acts against me. (Exhibit AA: 1:22-CV-02355-GLR Pro Se 7 at 4) 202204160 is not related to 1:23-CV-2601.

14.    I appealed 2021000075 (Attachment 2: EEOC Decision 2021000075) to the United States District Court for the District of Maryland (Baltimore) in 1:21-CV-01563-JMC on June 23, 2021 regarding EEOC's decision to affirm the MSPB decision for my wrongful termination's failure to accommodate claim. (Exhibit CJ: 1:21-CV-01563-JMC Civil Cover Sheet); (Exhibit CH: 1:21-CV-01563-JMC Pro Se 7); (Exhibit CI: 1:21-CV-01563-JMC June 23, 2021 SoF) June 23, 2021 is within 30 days of the May 24, 2021 2021000075 EEOC decision. (Attachment 2: EEOC 2021000075 Decision) Magistrate Caulson granted Defendants' Motion to Dismiss or Alternatively to Transfer, dismissing 1:21-CV-01563-JMC without prejudice on July 29, 2022. (Exhibit CN: 1:21-CV-01563-JMC Decision Order)

15.    For the second time, I appealed 2021000075 to the United States District Court for the District of Maryland (Baltimore) in 1:22-CV-02355-GLR on September 15, 2022

regarding the EEO complaint for my wrongful termination's failure to accommodate claim. (Exhibit AJ: 1:22-CV-02355-GLR Civil Cover Sheet); (Exhibit AA: 1:22-CV-02355-GLR Pro Se 7) Thus far, I have submitted the initial pleading and Statements of Facts, which I have updated three times. (Exhibit AA: 1:22-CV-02355-GLR Pro Se 7); (Exhibit AB: 1:22-CV-02355-GLR September 15, 2022 Statement of Facts); (Exhibit AC: 1:22-CV-02355-GLR November 17, 2022 Updated Statement of Facts); (Exhibit AD: 1:22-CV-02355-GLR December 29, 2022 Updated Statement of Facts); (Exhibit AE: 1:22-CV-02355-GLR April 11, 2023 Updated Statement of Facts at 3) I subsequently filed my Reply to Motion to Dismiss or Transfer on June 9, 2023. (Exhibit AF: 1:22-CV-02355-GLR: Memorandum of Law in Opposition to Motion to Dismiss or, in the Alternative, Transfer) I most recently filed my Motion to Amend Pleading with the Amended Complaint on July 14, 2023. (Exhibit CQ: Motion to Amend Pleading); (Exhibit CR: Memorandum in Support of Motion to Amend Pleading); (Exhibit CS: Amended Complaint); (Exhibit CT: July 14, 2023 Updated Statement of Facts).

16. This is the personal civil suit for 1:23-CV-2601. While Alejandro Mayorkas and Deanne Criswell are named as defendants, this is not a complaint against the federal government. Mayorkas and Criswell are listed as defendants because they are required to be notified in cases of complaints regarding government employees in their official government capacity.

17. To state a prima facie case of Title VII discrimination, a claim must allege: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012).

18. I allege membership in a protected class in HS-FEMA-01522-2019. The Agency's own statement of the case states that my discrimination complaint was based on race, sex (female), and retaliation from prior EEO activity. (Exhibit D: HS-FEMA-01522-2019, Agency File pp. 38) I selected race, sex (female), and retaliation/reprisal on the DHS Individual Complaint of Employment Discrimination. (Exhibit D: HS-FEMA-01522-2019, Agency File pp. 40) In the Complaint, I identify my race and gender by stating "I am a black female." (Exhibit D: HS-FEMA-01522-2019, Agency File pp. 48) Moreover, EEOC decision 2022000766 states that "Complainant filed a formal EEO complaint alleging that the Agency subjected her to hostile workplace discrimination on the bases of race (African-American), sex (female), and reprisal for protected EEO activity…." (Attachment 3: EEOC Decision 2022000766, pp. 1)

19. What's more, I delineated the race, gender, disability, and retaliatory bases for my discrimination throughout the Prehearing Submission for DC-0752-20-0145-I-1, the MSPB case, in HS-FEMA-01522-2019, in HS-FEMA-01522-2019's updates, and the brief for EEOC decision 2022000766. (Exhibit P: Prehearing Submission); (Exhibit D: HS-FEMA-01522-2019) (Exhibit F: HS-FEMA-01522-2019 Nov 27 2019 Update); (Exhibit G: HS-FEMA-01522-2019 Dec 2 2019 Update); (Exhibit S: 2022000766 Updated EEO Complaint Info 1.4)

20. Additionally, I allege that my job performance was satisfactory. As previously stated, prior to 2018, there were no negative comments in my performance reviews and appraisals. Starting in the second quarter of 2018, Mr. Langley began inserting negative, unverified comments into my performance reviews and appraisals. Specifically, Mr. Langley acknowledged that as of December 2018, at the end of the performance evaluation, I went from a 3.8 out of 5, which indicated exceeded expectations, to a 0. (Exhibit T: Kevin Langley February 6, 2020 Deposition Testimony, pp. 248, lines 6-21 – pp. 249, lines 1-17)

21. Finally, I identify similarly situated employees outside of my protected classes and allege that I was treated differently than those employees. JaNina DeJesus, an Asian female employee who directly reported to Mr. Langley at the time I did, failed to follow Mr. Langley's instructions at least once regarding finding someone to conduct Field Call for when she was not available. (Exhibit D: HS-FEMA-01522-2019) (Exhibit CP: Agency File pp. 100; 135) Mr. Langley did not attempt to discipline her. According to Keith Johnson's deposition testimony, there was a review of comparators, and to his understanding, Mr. Langley had never issued discipline to another employee under their supervision. (Exhibit U: Keith Johnson February 5, 2020 Deposition Testimony, pp. 184-187) According to the Prehearing Submission, both Mr. Langley and Ms. Register yelled and directed profanity at me. (Exhibit P: Prehearing Submission, pp. 11-12 of 80; 16 of 80; 18 of 80; 21-22 of 80; 35 of 80) Although Mrs. Baione admitted workplace issues including multiple uses of profanity and yelling at work, she was never formally disciplined for use of profanity at work and never received any discipline for unprofessional behavior. (Exhibit V: Georgia Baione February 4, 2020 Deposition Testimony, pp. 172, lines 15-21- pp. 173, lines 1-3; pp. 177, lines 16-21 – pp. 178, lines 1-3) According to Keith Johnson's deposition testimony, he did not recall if other employees had raised their voice, used profanity, or other types of inappropriate behavior in the same workspace. (Exhibit U: Keith Johnson February 5, 2020 Deposition Testimony, pp. 184-187) According to the Prehearing Submission, "I sprayed Lysol in my area from my desk to kill the germs so I wouldn't catch his germs. I never left my seat." The Prehearing Submission goes on to describe Mrs. Georgia Baione previously spraying Lysol in close proximity to me. (Exhibit P: Prehearing Submission, pp. 14 of 80) When asked about his own yelling at work, Mr. Langley admitted he had raised his voice, but that it was not unprofessional. (Exhibit T: Kevin Langley Deposition Testimony, pp. 102) To my knowledge, Mr.

17

Langley was never disciplined. In fact, Mrs. Gammon promoted him to Director of Logistics Systems after Ms. Register retired. Mr. Langley admitted that he was Deputy Director when I worked at FEMA. (Exhibit T: Kevin Langley Deposition Testimony, pp. 23 lines 18-21 – pp. 26, lines 1-3).

22. I proved I am qualified for the Logistics Management Specialist position. According to my SF-50, my occupational code was 0346 as a career (permanent) GS-13. (Exhibit W:  Termination SF-50) According to the Office of Personnel Management, 0346 is Logistics Management Series.[2] A career[3] appointment begins once an employee has completed three years of permanently substantially continuous creditable service in the competitive service. As a GS-13 0346 career employee, I was qualified for the Logistics Management Specialist position based on my rank, experience, and job series. Had I not been qualified, I would not have been hired for the position.

23.     I also proved I am qualified for the APM position. "I received an email on August 20, 2019 informing me that I was among the most highly qualified for LSD's Assistant Program Manager position and had made the cert. According to Loraine Bowman, Human Resources sent the cert list to Ms. Register on August 27, 2019, and she has three weeks to make a selection from it. I spoke to Ms. Bowman about this on August 30, 2019. I was not contacted for an interview." (Exhibit P: Prehearing Submission, pp. 58 of 80) According to opm.gov, the selection certificate[4]

[2] Office of Personnel Management Office of Personnel Management https://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/standards/0300/gs0346.pdf (last visited June 7, 2023)

[3] USAJOBS  https://www.usajobs.gov/Help/working-in-government/appointments/  (last visited June 7, 2023)

that Ms. Register received "rank ordered the eligible candidates based on the ranking procedure identified in the job opportunity announcement and eligible candidates identified in the fourth step of the Evaluate Applications element." As a member of the selection panel, Mr. Langley saw the certificate and was aware that although I was listed on it, Ms. Register did not select me for an interview. (Exhibit CO: Langley APM Selection Panel Remarks)

To state a prima facie case for disability discrimination, a claim must allege: (1) that the plaintiff has a disability; (2) that the plaintiff is a 'qualified individual' for the employment in question; and (3) that [the plaintiff's employer] discharged the plaintiff (or took other adverse employment action) because of the plaintiff's disability. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). In addition, I allege that the Agency terminated me because of my disability. That is the basis of EEOC Decision 2021000075. "Petitioner alleged that the Agency discriminated against her on the bases of her disability (mental/autism) and reprisal for prior EEO activity when, on October 17, 2019, she was removed from a position as a Logistics Management Specialist. (Attachment 2: EEOC Decision 2021000075 at 1) During deposition testimony, Mr. Langley acknowledged that he saw the autism documentation before I was terminated. (Exhibit T: Kevin Langley Deposition Testimony, pp. 260, lines 5-11) Mr. Langley admitted that he did not consider my autism diagnosis during his evaluation. (Exhibit T: Kevin Langley Deposition Testimony, pp. 261, lines 4-20) It appears that Mr. Langley and Mr. Johnson collaborated to stall providing me responses to my questions about my reasonable accommodation request to run out the clock and not provide a response

[4] Office of Personnel Management https://www.opm.gov/policy-data-oversight/human-capital-management/hiring-reform/hiring-process-analysis-tool/issue-certificate-and-notify-eligibles/ (last visited on 6/7/2023)

before my wrongful termination. For example, the accommodation request for me to return to the office would've also allowed me to regain access to FEMA's network and provide a better response to Mr. Langley's Removal Proposal. In another instance, after I told Mr. Johnson that Ed Dorsey had already told me he had spoken to Mr. Langley, which Mr. Johnson previously indicated had not happened, Mr. Johnson then suggested that I "confirm with Mr. Dorsey that he was fully responsive to Mr. Langley's follow up questions." Shortly thereafter, Mr. Johnson refused to respond to any additional questions regarding my reasonable accommodation request. (Exhibit P: Prehearing Submission, pp. 59 – 65 of 80)

24.     In this case, venue is proper in the District of Columbia based on Judge Russell's order.

October 27, 2023

Eyphra Ransom
300 W Redwood St. Apt. 822
Baltimore, MD 21201
(202)774-8103
ransomeyphra@yahoo.com

**October 27, 2023 Updated Prayer for Relief**

**PRAYER FOR RELIEF**

1.　　By reason of the foregoing and supporting documentation, I request general and compensatory damages, to include punitive damages.

2.　　By reason of the foregoing and supporting documentation, I request repayment for court and attorneys' fees.

3.　　By reason of the foregoing and supporting documentation, I request acceptable written references from my former supervisors, Mr. Kevin Langley, and Ms. Mary Rose Register. The references should not only describe work I completed but also my intangible qualities; they should not be neutral references, as Mr. Langley previously offered to provide.

4.　　By reason of the foregoing and supporting documentation, I request acceptable individual public, verbal apologies well as acceptable written apologies from everyone involved in misconduct, harassment and/or discrimination regarding me. The communications should be addressed to all parties who witnessed my harassment and who were on emails in which I was harassed or discriminated against. For the public apologies, I request that everyone who was on emails involving discrimination against me be present, if possible.

5.　　By reason of the foregoing and supporting documentation, I request that the Agency impartially research and investigate the information in this complaint since it includes information that the Agency did not previously permit me to submit and that, therefore, was not previously researched and investigated.

6.　　By reason of the foregoing and supporting documentation, I request that the Agency appropriately discipline all parties that are guilty of any misconduct, harassment,

1

discriminatory behavior, or illegal behavior regarding me. By reason of the foregoing and supporting documentation, I request that the Agency provide a report of what, if any, disciplinary action is taken to me.

7. By reason of the foregoing and supporting documentation, I request that Mrs. Gammon tell Mr. Mike Henning and Ms. Tami Franklin (or the people in their former positions) as well as DHS Inspector General (DHS IG) and the Federal Protective Service (FPS) in writing that she encouraged Ms. Register to make the report of false safety concerns, and that the FPS officers were comfortable with my presence at FEMA HQ. As the senior person who encouraged that the false safety concerns be reported, she should take ownership. Mr. Langley should also notify FPS, Mr. Henning, Ms. Franklin, and DHS IG to disclose his role in mitigating FPS officers when they detained me. I request that I am cc'd on these communications or receive copies of them.

8. By reason of the foregoing and supporting documentation, I request that Mrs. Gammon, Ms. Register, and Mr. Langley to report to DHS IG that they ordered me to serve as the primary for the User Account Manager UAM work, and continued to direct me to do it as the primary after I qualified the work and the results showed that the work was beyond the 20% for other duties as assigned, per my Position Description, and should not have been assigned to me per the Union Collective Bargaining Agreement. I request to be cc'd or receive copies of these communications. Mrs. Gammon admitted during the MSPB hearing that she used her supervisory experience to adjudicate UAM grievance, when nothing outside of the grievance should've been considered in adjudicating it.

9. I further request to have Mrs. Gammon report her role in failing to investigate the false complaint about me that Keith Williams made to the Federal Bureau of Investigation

(FBI) once she became aware of it and to have Mr. Williams report it himself to Mr. Mike Henning and Ms. Tami Franklin (or the people in their former positions) the FPS, and the FBI. Mrs. Gammons's excuse in deposition testimony that when Mr. Williams told her what he reported was that some time had passed. She could not say what Mr. Williams told her he reported because she did not ask. Not until MSPB testimony did Mrs. Gammon provide an answer, which was Keith Williams's lie to her about what he actually reported. Ms. Tami Franklin needs to report her failure to act upon learning of Mr. Williams's false FBI report to DHS IG. I request that I am cc'd or receive copies of these communications.

10.    By reason of the foregoing and supporting documentation, I request appropriate sanctions for the Agency's handling of the investigation.

11.    Finally, by reason of the foregoing and supporting documentation, I request such additional relief as this Commission may deem just and proper.

Eyphra Ransom
300 W Redwood St. Apt. 822
Baltimore, MD 21201
(202)774-8103
ransomeyphra@yahoo.com