**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| EYPHRA RANSOM, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-2601 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 25, 27 |
| | : | | |
| JEFFREY DORKO, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**G**RANTING **D**EFENDANTS' **M**OTION TO **D**ISMISS; **D**ENYING AS **M**OOT **P**LAINTIFF'S **M**OTION FOR **D**EFAULT **J**UDGMENT

## I. INTRODUCTION

*Pro se* plaintiff Eyphra Ransom ("Plaintiff" or "Ransom") filed this suit against Alejandro N. Mayorkas, Secretary of Homeland Security; Jeffrey Dorko, Assistant Administrator, Logistics Management; and Carla Gammon, Deputy Assistant Administrator, Logistics Management, and fourteen individual government employees in their personal capacities (collectively, "Defendants"). This case is the first of three filed by Plaintiff, all of which arise from the same set of facts. Plaintiff, a former employee of the Federal Emergency Management Agency ("FEMA" or the "Agency"), alleges that she experienced discriminatory conduct based on her race, gender, and disability status. This conduct included failure to hire, termination of employment, failure to provide reasonable accommodations, retaliation, and other unspecified actions, all of which she claims violate her constitutional rights. Defendants file a motion to dismiss arguing that this Court lacks jurisdiction over the claims, the Secretary of Homeland Security is the only proper defendant, Plaintiff's claims are untimely, and the Amended Complaint fails to state an actionable discrimination claim. Defs.' Motion to Dismiss

("Defs.' Mot. Dismiss"), ECF No. 25.  Separately, Plaintiff moves for default judgment, arguing

that Defendant Jeffrey Dorko did not respond to her *Bivens*[1] complaint and that she is entitled to

relief.  Pl.'s Mot. for Default J. ("Pl.'s Mot."), ECF No. 27.  For the reasons set forth below,

Defendants' motion to dismiss is granted and Plaintiff's motion for default judgment is denied.[2]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Eyphra Ransom was a GS-13 Logistics Management Specialist within the FEMA

Logistics Systems Division.  Complaint ("Compl."), ECF No. 1; Amended Complaint ("Am.

Compl. I"), ECF No. 12.[3]  On August 21, 2019, Plaintiff received a proposed notice of removal

from federal service, citing failure to follow instructions, absence without leave, lack of candor,

and inappropriate behavior.  Compl. ¶ 1.  Six days later, Plaintiff submitted a reasonable

accommodation form indicating a diagnosis of autism spectrum disorder.  Compl., Attach. 1,

---

[1] While Defendants argue that the claim fails under 42 U.S.C. § 1983, Plaintiff amended the complaint as a *Bivens* action in her filings.  Accordingly, the Court will analyze it as such.

[2] Plaintiff has also moved for default judgment, arguing that Defendants failed to respond to the Amended Complaint and serve her with certificate of service.  Pl.'s Mot. at 11–12.  "Pursuant to Federal Rule of Civil Procedure 55, there is 'a two-step process for a party seeking default judgment: entry of default, followed by entry of default judgment.'"  *Edwards v. Charles Schwab Corp.*, No. 19-cv-3614, 2022 WL 839636, at *1 (D.D.C. Feb. 14, 2022) (quoting *Farris v. Rice*, No. 05-cv-1975, 2006 WL 8435181, at *1 (D.D.C. Jan. 17, 2006)).  Only "[a]fter the clerk's entry of default, the plaintiff may move for default judgment."  *Id.* (quoting *Simon v. Dep't of Just.*, No. 20-cv-0580, 2020 WL 4569425 at *2 (D.D.C. Aug. 7, 2020)).  First, the Court may only grant default judgment after an entry of default.  Here, the clerk has not entered a default.  Second, the Defendants filed a timely motion to dismiss but mistakenly failed to attach a Certificate of Service or mail the motion to Plaintiff's address, assuming they had access to ECF.  After realizing Plaintiff did not have ECF access and privileges, Defendants immediately emailed a copy, and Plaintiff was given additional time to file her response.  The Court finds that this error is not a tactic that delayed the process of litigation and Defendants took instant steps to remedy.  Therefore, Plaintiff's motion lacks merit and is denied as moot.

[3] Though Plaintiff filed a previous Amended Complaint at ECF No. 12, the Amended Complaint at ECF No. 19 is the operative complaint.  The Court additionally considers the fulsome allegations included in the initial Complaint and Supplemental Memorandum at ECF Nos. 1 and 2 and Amended Complaint at ECF No. 21 because those exhibits help paint the full picture of her allegations.

ECF No. 1-4 at 33.[4]  On October 16, 2019, FEMA formally removed Plaintiff from federal

service, effective October 17, 2019.  Compl., Ex. M, ECF No. 1-20.[5]  Plaintiff appealed her

removal to the Merit Systems Protection Board ("MSPB" or the "Board") and filed multiple

Equal Employment Opportunity Commission ("EEOC") discrimination complaints and civil

actions.  *See* Am. Compl. I.

### A.  MSPB Case DC-0752-20-0145-I

Plaintiff filed an appeal with the MSPB on November 18, 2019, challenging FEMA's

decision to remove her.  Compl., Ex. M.  In her appeal, Plaintiff argued that FEMA lacked

sufficient evidence for the charges leading to her removal, misapplied the *Douglas* factors,[6]

committed procedural errors by failing to provide all documents considered for her removal, and

engaged in disability discrimination and retaliation for alleged Whistleblower activity and her

exercise of rights.  Supplemental Memorandum ("Suppl. Mem."), Ex. P, ECF No. 2-1.

The MSPB conducted a two-day hearing.  Compl., Ex. M at 2.  On July 30, 2020, the

MSPB issued its initial decision, upholding FEMA's removal of Plaintiff.  The Board found that

Plaintiff had not shown that she was subjected to disparate treatment based on disability, nor had

FEMA failed to accommodate her disability.  *Id*. at 36.  Although the MSPB noted that

Plaintiff's disability may have contributed to her misconduct, it clarified that disability does not

excuse misconduct.  Neither the Rehabilitation Act nor the Americans with Disabilities Act

"immunizes disabled employees from being disciplined for misconduct in the workplace,

---

[4] For the exhibits that are attached to the Complaint and Supplemental Memorandum at ECF Nos. 1 and 2, the Court will cite to these exhibits by their ECF numbers.

[5] This attachment is restricted and filed as "Court Only."

[6] The *Douglas* factors are used by the MSPB to assess the reasonableness of a penalty that an agency imposes on an employee in an adverse action.  *See Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 332 5 M.S.P.R. 280 (1981).

provided the agency would impose the same discipline on an employee without a disability." *Id.* at 35–36. Additionally, the MSPB observed that FEMA's management was unaware of Plaintiff's diagnosis when proposing her removal and had not considered her disability in that decision. *Id.* at 33.

The MSPB also concluded that there were no harmful procedural errors in the process leading to Plaintiff's termination. *Id.* at 39–40. Plaintiff had received the proposed removal notice with twenty-three attached documents, providing her with sufficient information to respond. Furthermore, while the Agency's decision-maker knew of Plaintiff's prior grievances, this knowledge did not prejudice the decision to remove her. *Id.* at 45. The MSPB also determined that Plaintiff had failed to show that she was treated differently than other similarly situated employees. *Id.* at 52–53. The Board's initial decision became final on September 3, 2020, and Plaintiff was notified of her options for appeal, which included filing a petition for MSPB Board review, a petition with the U.S. Court of Appeals for the Federal Circuit, or filing a civil action within the designated time frames. *Id.* at 55–63.

### B. EEOC Appeal No. 2021000075

Plaintiff filed a petition with the EEOC on October 3, 2020, seeking review of the MSPB decision. Suppl. Mem., Ex. Q, ECF No. 2-2. On May 24, 2021, the EEOC Office of Federal Operations issued a decision affirming the MSPB's decision. The EEOC concluded that (1) FEMA did not know of Plaintiff's disability until after proposing her removal, (2) FEMA was not obligated to accommodate Plaintiff during the administrative leave period, (3) the charges against Plaintiff were substantiated, and (4) FEMA had articulated legitimate, nondiscriminatory reasons for its actions, which Plaintiff failed to prove were pretextual. Compl., Attach. 2, ECF

No. 1-5 at 4–5.  The EEOC decision informed Plaintiff of her right to file a civil action within thirty calendar days.

### C.  EEOC Complaint HS-FEMA-01522-2019

On May 21, 2019, Ransom initiated EEO counseling for a discrimination and harassment complaint based on her race (African American), sex (female), and retaliation.  Compl., Ex. K, ECF No. 1-18 at 1.  On October 20, 2021, FEMA issued a final agency decision finding no discrimination.  *Id*. at 22.  This decision provided Plaintiff with information about her appeal rights, including the option to file with the EEOC Office of Federal Operations or to pursue a civil action.  *Id*. at 23.  Ransom appealed this decision to the EEOC Office of Federal Operations on November 24, 2021, leading to Appeal No. 2022000766.  Compl., Attach. 3, ECF No. 1-6. On January 31, 2023, the EEOC upheld FEMA's decision, determining that Plaintiff had not been subjected to discrimination or retaliation.  *Id*.  Subsequently, the EEOC informed Plaintiff of her right to file a civil action within ninety calendar days.

### D.  EEOC Case HS-FEMA-01742-2021

On November 2, 2021, Plaintiff filed another claim of discrimination.  FEMA accepted for investigation Plaintiff's allegations of discrimination and harassment based on her race, national origin, sex, disability, and retaliation (following her prior EEO case HS-FEMA-01522- 2019).  Specifically, Plaintiff contended that she faced discrimination when: (1) she was not selected for a FEMA Program Analyst position in June 2021, (2) she was excluded from applying for a Deputy Program Manager position on June 23, 2021, (3) she was not selected for a Customer Representative position on June 30, 2021, and (4) FEMA withdrew a job offer for a Customer Representative position on August 2, 2021.  Compl., Ex. Y, ECF No. 2-9.  Plaintiff has

indicated that the case, HS-FEMA-01742-2021, is currently under appeal with the EEOC as Appeal No. 202204160.  Compl. ¶ 13.

### E.  Civil Actions

Plaintiff filed a civil action on June 23, 2021, *Ransom v. Mayorkas*, No. 21-cv-1563 (D. Md.), seeking review of the MSPB decision affirming her termination from FEMA.  *See* Defs.' Mot. Dismiss, Ex. A, ECF No. 25-1.  Plaintiff's primary argument was that the MSPB had not addressed her claims of Whistleblower retaliation and Title VII retaliation.  *See id*. at 6.  The court, however, determined that it lacked jurisdiction over the Whistleblower retaliation claim, which fell under the jurisdiction of the U.S. Court of Appeals for the Federal Circuit.  *See id*. at 7.  Regarding the Title VII retaliation claim, the court found that Plaintiff had not exhausted the administrative remedies required.  *Id*. at 8.  The court dismissed Plaintiff's complaint without prejudice.  *Id*.

On September 15, 2022, Plaintiff filed another lawsuit, *Ransom v. Mayorkas*, No. 22-cv-2355 (D. Md.).  Defs.' Mot. Dismiss, Ex. B, ECF No. 25-2.  The court reviewed Plaintiff's claims of discriminatory conduct, including failure to hire and unlawful termination based on race, sex, and autism disability.  *See id.* at 1–2.  The court dismissed Plaintiff's claims related to MSPB Case DC-0752-20-0145-I and EEOC Appeal No. 2021000075 as untimely, noting that these claims were filed more than thirty days after the final decision.  *Id.* at 10–11.  The court also dismissed Plaintiff's claims based on EEO Case No. HS-FEMA-01522-2019, as Plaintiff filed the civil complaint before receiving the EEOC Office of Federal Operations' final decision. *Id.*  at 12.  The court determined that the District of Columbia was the proper venue but dismissed the case due to the untimeliness and failure to exhaust administrative remedies.  *Id*. at 14.

Plaintiff filed the instant action on July 13, 2023, in the District of Maryland, which was transferred *sua sponte* to this Court, alleging failure to hire, termination, failure to accommodate, and retaliation. *See generally* Compl.  Plaintiff filed another case, *Ransom v. Mayorkas*, No. 24-cv-0158 (D. Md.), alleging failure to hire, failure to accommodate, and retaliation under Title VII of the Civil Rights Act. *See* Defs.' Mot. Dismiss, Ex. C, ECF No. 25-3.  Another action, *Ransom v. Mayorkas*, No. 24-cv-0692, is also pending before this Court alleging failure to hire, wrongful termination, failure to accommodate, retaliation, harassment, and hostile work environment in violation of Title VII of the Civil Rights Act, 42 §§ 2000e–2000e-17; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117; the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794; and the Federal Sector Equal Employment Opportunity, 29 C.F.R. Part 1614.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are "couched as . . . factual allegation[s]," *see Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "even a pro se plaintiff must meet his burden of proving that the Court has subject matter jurisdiction over the claims." *Fontaine v. Bank of Am., N.A.*, 43 F. Supp. 3d 1, 3 (D.D.C. 2014); *see also Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011); *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010).

## IV.  ANALYSIS

Defendants raise four arguments to dismiss this case for lack of subject-matter jurisdiction, or alternatively, failure to state a claim. *See generally* Defs.' Mot. Dismiss. Specifically, they argue that the Court lacks jurisdiction over the claims, the Secretary of Homeland Security is the only proper defendant, Plaintiff's claims are untimely, and the Amended Complaint fails to state an actionable discrimination claim. *See id.* at 8–13. Liberally construing the Plaintiff's Amended Complaint, the Court finds that Plaintiff fails to state a claim, and the action should therefore be dismissed.

### A.  Failure to State a *Bivens* Claim

Defendants argue that the Court lacks jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim, which arises out of her employment and termination from FEMA. Defs.' Mot. Dismiss at 8. Specifically, they contend that an action under Section 1983 is only available against those

acting under color of state law. *Id.* Plaintiff counters that she amended the complaint, filing her employment and wrongful termination claims under *Bivens*, giving the Court subject matter jurisdiction. Pl.'s Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 11–12, ECF No. 33. Although the pleadings do not clearly allege specific constitutional violations, Plaintiff has purported to bring a *Bivens* action, and the Court will analyze it in the light most favorable to Plaintiff. *See generally* Operative Complaint ("Op. Compl."), ECF No. 19.[7]

Plaintiff's constitutional claims are vague, but to the extent that she is asserting constitutional violations, she has not alleged sufficient facts to hold the listed defendants personally liable. In *Bivens*, the Supreme Court held that an individual may bring an action for damages "against a federal agent acting under color of his authority" for alleged constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). To state a *Bivens* claim, a plaintiff must "plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 663. In other words, a plaintiff must plead facts that, when accepted as true, show that the named defendants were personally involved in the violation of plaintiff's constitutional rights.

The Court finds that Plaintiff has failed to allege that the listed defendants themselves took any action that violated her constitutional rights. *See generally* Op. Compl. Plaintiff's claims are based on FEMA's decision to terminate and fail to promote her, alleging that these actions were improperly motivated by Plaintiff's race, gender, and disability. *See id.* at 2–7. However, throughout the pleadings, Plaintiff repeatedly points to "FEMA" and the "Agency" as the culprits, rather than specific individuals. *See id.* Moreover, the two specific employees that

---

[7] Page numbers for this document will correspond to the page listed at the top of the ECF document rather than the ones listed on the bottom of the page.

are named for potential discriminatory behavior—Mr. Langley and Ms. Register—are
subordinates of Carla Gammon. *See id.* at 17–20, 27–28. Yet, Plaintiff concedes that Carla
Gammon is listed because, in her supervisory role, she signed off on the termination decision on
behalf of the Agency. *Id.* at 2. But to be held liable under *Bivens*, an official must have
personally participated in the alleged wrongdoing — liability cannot be based on a theory of
vicarious liability or respondeat superior. *See Iqbal*, 556 U.S. at 663 ("Because vicarious
liability is inapplicable to *Bivens* … suits."); *see also Cameron v. Thornburgh*, 983 F.2d 253, 258
(D.C. Cir. 1993) (holding that a complaint naming the Attorney General and BOP Director as
defendants based on *respondeat superior*, failed to state a *Bivens* claim without specific
allegations of personal involvement). Carla Gammon's supervisory role alone does not render
her personally liable for alleged constitutional violations of her subordinates.

Similarly, the complaint specifies no personal action taken by Alejandro Mayorkas or
Jeffrey Dorko. *See generally* Op. Compl.; *Simpkins v. District of Columbia*, 108 F.3d 366, 369
(D.C. Cir. 1997) ("The complaint must at least allege that the defendant federal official was
personally involved in the illegal conduct."). Again, a mere association with the agency or a
supervisory role is not sufficient to establish liability under *Bivens*. Although a *pro
se* plaintiff may be given some leniency in pleading requirements, Plaintiff still must plead her
alleged constitutional violations with sufficient specificity. *See Saunders v. Reno*, No. 93-cv-
1829, 1993 WL 771009, at *4 (D.D.C. Dec. 20, 1993). Conclusory allegations of discrimination
and harassment without specific facts are insufficient. *Id.* Because Plaintiff fails to articulate

any specific action taken by Defendants in violation of her constitutional rights, she has failed to state a claim upon which relief can be granted.[8]

Beyond that, the Supreme Court has cautioned courts on implying *Bivens* actions and considers it a "'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 121 (quoting *Iqbal*, 556 U.S. at 675). The Supreme Court has established a two-part test to determine whether to extend a *Bivens* remedy. *See id.* at 122. "First, we must consider whether the plaintiff seeks to extend *Bivens* into a 'new context.' If so, we then must consider whether there are any 'special factors counselling hesitation.'" *Loumiet v. United States*, 948 F.3d 376, 381 (D.C. Cir. 2020) (quoting *Ziglar*, 582 U.S. at 121). A "new context" has been construed broadly encompassing any context "different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 582 U.S. at 122. Additionally, Congressional action has been recognized as an important special factor and the existence of an "alternate remedial scheme" counsels against extending a *Bivens* remedy. *See id.* at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

The Supreme Court has implied a *Bivens* cause of action in only three instances — *Bivens* (Fourth Amendment search and seizure violations), *Davis v. Passman* (Fifth Amendment gender discrimination claim), and *Carlson v. Green* (inadequate medical care for prisoners violating the Eighth Amendment). *See Ziglar*, 582 U.S. at 131. Because Plaintiff's claims do

---

[8] It should also be noted that *Bivens* claims require personal service of process upon each defendant to obtain personal jurisdiction over them in their individual capacity. *See Huskey v. Quinlan*, 785 F. Supp. 4, 5–6 (D.D.C. 1992). However, the parties have not addressed this issue in their pleading, so the Court does not address it. *See generally* Defs.' Mot. Dismiss.

not fall within the three recognized *Bivens* contexts, extending a remedy here would result in judicial expansion.

Even if Plaintiff's claims were sufficiently pled, the existence of alternative remedial structures such as Title VII and the Civil Service Reform Act ("CSRA") preempt extending a *Bivens* remedy.  The Supreme Court has made clear that Title VII is "the exclusive judicial remedy for claims of discrimination in federal employment."  *Brown v. GSA*, 425 U.S. 820, 835 (1976).  By the same token, the Supreme Court recognizes the CSRA as a "comprehensive system for reviewing personnel action taken against federal employees."  *United States v. Fausto*, 484 U.S. 439, 455 (1988); *see also Bush v. Lucas*, 462 U.S. 367, 385, n.25 (1983).  Moreover, courts in this Circuit have declined to extend *Bivens* remedies to constitutional claims arising from wrongs covered by Title VII and the CSRA.  *See generally Neely v. Blumenthal*, 458 F. Supp. 945 (D.D.C. 1978); *Rogler v. Biglow*, 610 F. Supp. 2d 103 (D.D.C. 2009); *Kittner v. Gates*, 708 F. Supp. 2d 47 (D.D.C. 2010).  Given this clear legislative framework, implying a *Bivens* remedy in this context would not only be inconsistent with Supreme Court precedent but would also circumvent the comprehensive remedial schemes enacted by Congress.  Therefore, the Court declines to imply a *Bivens* remedy and dismisses Plaintiff's claims for failure to state a claim upon which relief can be granted.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 25) is **GRANTED** and Plaintiff's Motion for Default Judgment (ECF No. 27) is **DENIED** as moot.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 20, 2025                                        RUDOLPH CONTRERAS
                                                             United States District Judge